## CROMBIE & *a. v.* PORTSMOUTH MUTUAL FIRE INSURANCE COMPANY.

When a mutual fire insurance company, by their policy of insurance, after reciting that the assured had deposited their premium-note, and become members of the company, &c., " in consideration of the premises, promised and agreed to insure to them, their heirs, executors," &c., " the aforesaid sums upon the said policy against loss or damage by fire, subject to the conditions and provisions of the charter and by-laws of said corporation, for the term of five years ;" and by the fifth article of the by-laws it was provided that the greatest sum that could be taken on any one risk was $5,000, and by the eighth article it was provided that insurance should in no case be made on more than half the value of the goods, wares and merchandize, and that " partial losses shall be paid in full, not exceeding the amount insured ;" it was *held* that the corporation were liable for successive losses to the amount of the sum insured in the aggregate, and no more.

ASSUMPSIT, upon a policy of insurance, dated September 17, 1849, whereby the defendants contracted to insure Ricker & Jewett of Bangor, Maine, against loss by fire on their goods in the sum of $1,500 ; a copy of said policy, indorsement, application, and the by-laws of the defendants' company were made a part of the case.

On the 6th of June, 1851, the goods insured by said policy were damaged by fire to the amount of $505,34. After said loss and before the payment thereof by the defendants, said policy was assigned by Ricker & Jewett to the plaintiffs, being said Ricker & Jewett and J. M. Crombie. The defendants assented to said assignment on the 7th day of July,

1851.   On the 9th of September, 1851, the defendants paid said loss of $505,34, which was indorsed on said policy in the following words:

"Bangor, September 9th, 1851.

Rec'd of P. M. F. In. Co. $505,34, in full for loss by fire to the within insured property on the sixth day of June last.

RICKER & JEWETT,
J. M. CROMBIE."

On the 16th day of June, 1852, the plaintiffs' stock of goods was damaged by another fire to the amount of $1,451,35, said damage arising from destruction of some goods and injury to others.    The plaintiffs furnished to the defendants the schedule of loss under oath, according to the by-laws of said company.    The value of stock at either fire was over $3,000.    The plaintiffs were entitled to be paid whatever might have been due them on the 16th day of September, 1852.  .  The plaintiffs claimed that they were entitled to recover their whole loss, being $1,451,35.

The defendants confessed that they were liable to pay the plaintiffs $996,66, and interest from said 16th of September, 1852, up to the time of filing said confession, and pleaded the general issue as to the residue of the plaintiffs' claim.    The defendants contended that the payment on the 8th of September of $505,34, was *pro tanto* a fulfilment of their contract, and that they were liable only for the balance of said $1,500, $996,66.

The plaintiffs contended that they were entitled to recover the amount of their loss, not exceeding the amount insured, and that the payment and indorsement on said policy of $503,34, does not affect their rights to recover the full sum lost, $1451,35.

*Hackett*, for the defendants.

We do not deny that the defendants are liable to the plaintiffs for successive losses. What we say is, that it is competent for the parties to limit their liabilities, and that in this case the contracts were limited on both sides. The plaintiffs are not liable to assessments beyond the amount of their premium-note. The defendants are not liable to successive losses to above the sum insured, $1,500. This sum is the basis upon which the premium-note is founded. To call upon the court to hold the defendants liable beyond $1,500, is to ask them to make a new contract, not to interpret the one made by the parties; to change the equitable relations which the parties agreed upon, between the premium paid and the sum insured.

The ground taken by the plaintiffs, if sustained by the court, imposes an unlimited liability upon the defendants, and a restricted one only upon the plaintiffs. The substance of the contract is, that the plaintiffs agree for five years to pay their share of losses, not exceeding $240, in consideration of which, the defendants agree to pay all the plaintiffs' losses for the same time, not exceeding $1,500 in the whole.

What does $1,500 in the policy mean, if not to limit the risk? What does $240 in the premium-note mean, if not to limit the liability?

If the loss on the 6th of June had amounted to $1,500, and the receipt of September 9 had recited that sum instead of $505,34, the liability of the defendants would clearly be ended. Does it make any difference whether the whole $1,500 is destroyed on one day, or different days? If the defendants are liable beyond $1,500, they may have to pay for all the goods of the plaintiffs destroyed between this time and September 16, 1854, provided no one fire destroys more than $1,500. And under a policy in and by which they limited their liability to $1,500, they may be compelled to pay $20,000. And the plaintiffs would be liable to pay

assessments only on a premium-note, limited by and based upon a risk of $1,500 only.

The defendants never made such a contract. There is no consideration to support such a contract, and during fourteen years of extensive business no such claim was ever made upon them.

The defendants rely,

1. Upon the fact that their risk was based upon and graduated by the amount of the premium-note, and that one was the consideration for the other.

2. That both parties limited their risks, and that the company are no more liable upon their policy for more than $1,500, in the aggregate, than the plaintiffs are liable to pay more than $240 upon their premium-note.

3. That the losses happening at different times during the period of the risk, does not entitle the plaintiffs to recover more than $1,500 in the whole, any more than the company, by laying assessments at different periods, could entitle itself to receive of the plaintiffs, in the whole, more than $240.

4. That the receipt of the 9th of September, 1851, was intended by the parties to be, and in law is, an acknowledgment of a reduction of the risk, *pro tanto*, because the defendants' contract as to $505,34 of the $1,500 had been fulfilled.

5. The case of *Trull* v. *Roxbury Co.* 3 Cushing 263, is decisive in favor of the defendants.

*Blake*, for the plaintiffs.

The contract between the parties was founded upon a good consideration, and was in writing. That writing, the policy, speaks for itself, and it holds language authoritative upon the court. What, then, does it say? Why, that "Now this policy witnesseth that the said applicants are admitted as members," &c., and are assured "the aforesaid sums upon the said property against loss or damage by fire," &c., " for the term of five years," &c.

It was a contract continuing for five years—the consideration continuing for five years, namely, the liability to assessments upon the premium-note and to contribution under sections six and nine of the act of incorporation. The plaintiffs became members of the company for five years, with all the rights and liabilities incident thereto,—liable to assessments for other losses all the time, as liable after a total or partial loss by themselves as before. And why is not the company liable to them after as well as before any loss of their own? The contract of indemnity still continues alive, and the consideration continues to uphold it; and why is there not the same liability arising from it after as before?

The reasoning upon this point is conclusive in 3 Cushing 267. Counsel concedes it,—indeed, opens his ingenious argument with the admission that the defendants are liable for successive losses. Well, then, if the contract was a continuing one, continuing its liabilities upon the defendants as well as upon the plaintiffs, so that the defendants were as liable for a second or third loss as for the first, why are they not liable for the loss of June 16, 1852, namely, $1,451,35?

Because their liability is limited, counsel say. Where and how limited? They were insured in the sum of $1,500 upon their stock in store. If the stock were to be burnt, whether partially or entirely, the plaintiffs could recover only $1,500, because insured only to that amount on it. But the liability of the defendants would no more be at an end thereby than that of the plaintiffs. The plaintiffs would continue as before, members of the company; the contract would continue vital as before, imposing its mutual liabilities as before. If a new and light stock were bought and placed in the same store, the policy would then attach to it, though there might be no goods identically the same as were there when the risk was first assumed. The contract still continuing, the policy would cover the new stock to the same extent as it did the old. *Lane* y. *M. M. F. Ins. Co.* 12 Maine

Rep. This was the very object of the contract of indemnity for the term of five years. Neither party, of course, supposed it protected merely the goods then on hand. If, then, the policy was alive after the first partial loss, as before upheld by a consideration, still vital as before, and if, too, it attached to the new stock the same as to the old, then what limitation is there upon the liability of the company except of the $1,500 insured on it? The same precisely there was upon the first loss. The contract was one of indemnity for $1,500 upon the stock all the time for five years. That contract was not varied and the indemnity reduced to $996,66 after the first fire.

This policy has no other limitation than that of $1,500, and that is upon any one occurring loss; it has no limitation upon the aggregate of losses. Some policies do have such a limitation, and others have not. I apprehend where the insurance is for a term of years, and upon merchandize, like the one under consideration, that the present one is an exception to the general rule in this respect.

A policy of the Ætna Insurance Company, Connecticut, before me, dated March 16, 1849, insures "against loss or damage by fire to the amount of $400," &c., and then in the body of the policy, after referring to the by-laws, &c., agrees to make good, &c. "not exceeding in amount the sum insured." The policies of the People's M. F. Ins. Co., Maine, used to have no such limitation, but within some ten or dozen years they have, after stating the amount insured upon goods or buildings, near the bottom, in parenthesis, this limitation, "not exceeding the said amount insured." I have before me a policy dated November 6, 1852.

In *Curry* v. *Com. Insurance Company*, 10 Pick. 542, the decision is based upon a limitation "that the insurers shall not be liable for more than the sum insured in any case whatever."

And in *Trull* v. *Roxbury Company*, 3 Cushing 264, the

policy had this limitation in these words, " not exceeding the amount insured thereon." And the court place their opinion in that case, limiting liability, expressly upon this clause of limitation, as much as to say, and they do say so, that the Roxbury company would have been liable, as we claim the Portsmouth Company are here liable, had it not been for that express clause of limitation. But the policy under consideration has not this clause of limitation in it, or any similar one. If, therefore, the law of *Trull* v. *Roxbury Company* is sound, then the defendants are here liable for the amount of loss of June 16, 1852, as claimed by the plaintiffs, $1,451,35.

Nor is there any limitation in the act of incorporation or by-laws. In article 1, section 8 of the by-laws, the latter expression that " partial losses shall be paid in full not exceeding amount insured," is a per contra to the limitation in the preceding clause, to two-thirds of value of buildings and one half of value of merchandize insured, meaning that though the company will insure only to one half of the value of a stock of goods, say $1,000 upon $2,000 in value, yet if there is a partial loss of say $1,200, they will pay the full $1,000 insured on stock, and not $600 merely.

It was well enough to provide, for the interest of the company, that partial losses should be paid in full, otherwise few would effect insurance in the company, and then, having so provided, it was necessary to limit the partial loss to the amount insured. Else in the case just put, of partial loss of $1,200, the company would have been liable for $1,200, instead of $1,000, that is, more for a partial than for a total loss. A moment's reflection will satisfy the mind that the object of this by-law was only to limit the liability of the company for a given partial loss, and not to limit an aggregate of losses. For if it is this by-law that creates the limitation, then there is no other limitation than what it does create ; and the limitation is, therefore, upon the partial, and not upon the total losses, for this by-law says noth-

ing about total losses. And the absurdity then follows that the company would be liable for $1,500 only, in all, in case of half a dozen partial losses, but would be liable for half a dozen times $1,500 in so many total losses. The absurdity of the thing proves its fallacy.

I submit, therefore, that the defendants are liable for $1,451,25, as claimed by the plaintiffs; and further, that this result, that a fair construction of the policy leads the mind to, harmonizes with the equity and justice of the case. The plaintiffs reposed confidingly upon their insurance of $1,500 upon their stock, never dreaming that they were not insured, after the fire of June 6, 1851, upon their new stock, to the same extent as upon the old one before; and they had reason to so rely upon it, for no intimation was made to the contrary; and if they looked carefully into their policy, they found no limitation upon the amount of successive losses, as the policies of some other companies contained. They paid, too, a premium of $240, within a fraction of one-sixth of the amount insured, and were liable further for contribution for losses under sections 6 and 9 of the act of incorporation,—a consideration, enough in all conscience, to induce the belief of an indemnity as ample as the language of the contract.

WOODS, J. By a policy which bears date the 16th of September, 1849, reciting that Ricker & Jewett had deposited their note to the Portsmouth Mutual Fire Insurance Co. for $240, and had made application to be insured against damage or loss by fire, in the sum of $1,500 upon the property, being stock in trade, described in the application, Ricker & Jewett were admitted members of that company; " and the company, in consideration of the premises, promised and agreed " to insure to them, their heirs, executors," &c., " the aforesaid sums upon the said property, against loss or damage by fire, subject to the conditions and provisions of

the charter and by-laws of said corporation, for the term of five years."

By the fifth article of the by-laws referred to, " the highest sum that can be taken on any one risk is $5,000."

The eighth article provides that insurance shall in no case be made on more than one-half the value of the goods, wares and merchandize, and that " partial losses shall be paid in full, not exceeding amount insured."

By two successive fires, the goods protected by this policy were damaged in the several sums of $505,34, and of $1,451,35, within the term, and the question between the parties regards the amount which the plaintiffs, who have taken by an assignment the interest of Ricker & Jewett, may recover of the defendants; whether the recovery shall be limited to the sum of $1,500, insured upon the property, or extend to the amount of the two losses, each being within that sum, but amounting, in the aggregate, to a much larger one.

For the plaintiffs, it is urged that the contract was one of mutual indemity between the members of the company for the term of five years, by which each was entitled, upon the occurrence of any loss, to a full indemnity, not exceeding in any one instance the sum insured; that their several liabilities to the burdens incident to membership, continuing throughout the term, they ought also to enjoy the protection of the company during the same period.

For the defendants, it is said that the premium-note and rate of contribution of the members are adjusted with reference and in proportion to the amounts named in their respective policies, and that to allow indemnities beyond would disturb this proportion and the equities attending it; that by a succession of fires lighting upon one individual, the liabilities of the company would, upon the theory of the plaintiffs, be swollen to such enormity as would itself be evidence of the unsoundness of the position assumed.

There is not, perhaps, upon the face of the policy itself,

such distinctness as to exclude all doubt as to the exact measure of the rights and liabilities it creates, but it is certainly difficult to find upon any words it contains, an argument for charging the defendants beyond the sum of $1,500.

In marine policies of insurance, underwriters have sometimes been held to pay for a partial loss on repairs actually made, and for a total loss besides. But this liability, if not derived from authority, express or implied, given to the assured to labor for the safeguard and recovery of the property endangered or lost, has been gravely questioned as contrary to all principle and the elements of the contract. 3 Kent's Com. 340; 2 Phillips' Ins. 464.

And if it had not been thus questioned, there is not that strict analogy between marine and fire insurance, which would furnish any cogent reasons for adopting the principle in the latter class of cases.

In *Curry* v. *Commonwealth Ins. Co.* 10 Pick. 535, and in *Trull* v. *Roxbury Mut. Fire Ins. Co.*, 3 Cush. 263, the exemption of the company beyond the sum insured, was expressly based upon clauses in the respective policies, limiting their liabilities to that amount. In the latter case, the facts were in substance these: the house of the plaintiff, insured at a thousand dollars, had been destroyed by fire, and with his approbation, re-built by the company at a less cost. It was afterwards again destroyed, and the question was whether the defendants were liable, and to what extent. It was held that they were liable to pay the difference between the cost of re-building and the sum insured. The policy contained a clause limiting the indemnity to the amount insured.

The court say, " The assured is a member of the company so long as the policy exists, and the insurance is for a term of time. He pays a sum in the outset as a premium-note and deposit," &c. " He also makes himself liable to

pay assessments, to a limited amount, in order to pay losses to other members, should any occur," &c.

" Such being the contract between the parties, there seems to be no ground to hold that it is terminated by the payment of any loss. The assured, by his deposit-note, is liable to assessments according to the terms of the policy during the whole term; and the land on which the buildings stand is subject to a lien for its security. Were it not for the express limitation in the policy as to the amount of the sum insured, we do not see why the company might not be liable for successive losses."

It may not be necessary, in this case, to draw in question the conclusion to which the court in Massachusetts arrived, or to oppose to it the weighty opinions which have existed against the principle of holding the insurer to pay a greater sum than he has insured upon the property, as being " contrary to the elements of the contract," because we think that admitting such a construction of the policy not to be absolutely incompatible with its terms, the liability of the defendants is clearly limited by the by-laws which make a part of the contract.

By the fifth section, the highest sum to be taken on any one risk is $5,000. Upon the construction for which the plaintiffs contend, it is impossible to insure even the smallest sum allowed without infringing upon this provision. The clear intention of the by-law is to set a limit to the risk which the company may in any one case incur, and it would be evaded by insuring that sum upon any property, if such insurance involved a liability for total losses *toties quoties*.

By the eighth section, " partial losses shall be paid in full, not exceeding amount insured." This affirmative clause, by the concession of the parties, carries with it the correlative proposition that payments beyond that limit shall not be demanded.

Its first member contains the general view that partial losses shall be paid in full. Its second qualifies it by the

condition that such payments do not exceed the amount insured. If it had been intended that each partial loss should be paid in full, such several payments not to exceed the amount insured, it would have been so expressed, but it is difficult to give such a construction to the language actually used.

In the case of *Trull* v. *Roxbury Mut. Fire Ins. Co.*, the same words received from the court the construction which we give them. And the case did not differ from the present in any particular affecting the application of them, except that in the Massachusetts case they were embodied in the policy, and embraced total as well as partial losses, whereas in this case they are adopted into the policy, by reference to the by-laws, and relate only to partial losses.

Taking into view the several papers which contain the evidence of the contract, it is impossible to resist the conclusion that the parties did not stipulate for a larger indemnity than the sum insured.

That in companies formed upon precisely the same general principles, some insert this limitation in their policies, while others omit it, is rather an argument that the general understanding, as to the claims created by such policies, is, that they do not justly extend beyond the amount insured, than that a different principle of adjusting losses has been adopted. We do not, however, base the decision upon that ground, but rather upon the grounds before stated.

*Judgment for the plaintiffs for* $996,66.